IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| PARK 80 HOTELS, LLC, PL HOTELS, LLC, PH LODGING TOMBALL, LLC, SYNERGY HOTELS, LLC, 110 SUNSPORT, LLC, and AARON HOTEL GROUP, LLC, | * * * * * * | |
| Plaintiffs, | * * | |
| v. | * * * | 1:21-CV-04650-ELR |
| HOLIDAY HOSPITALITY FRANCHISING, LLC and SIX CONTINENTS HOTELS, INC., | * * * * | |
| Defendants. | * * | |

**ORDER**

This matter is before the Court on Motion for Summary Judgment [Doc. 123] and Motion to Exclude Expert Testimony of John Whitman [Doc. 136] by Defendants Holiday Hospitality Franchising, LLC and Six Continents Hotels, Inc., d/b/a Intercontinental Hotels Group (collectively, IHG or Defendants), and on Motion for Class Certification [Doc. 129] by Plaintiffs Park 80 Hotels, LLC, PL Hotels, LLC, PH Lodging Tomball, LLC, and Synergy Hotels, LLC.

I.    **Procedural Background**

This matter, involving breach of contract and deceptive trade practices claims, represents a consolidation of six putative class actions. On December 29, 2021, the Court granted the motion to consolidate PH Lodging Tomball, LLC v. Holiday Hospitality Franchising, LLC, No. 1:21-CV-05072-SDG (N.D. Ga.), Bensalem Lodging Associates LLC v. Holiday Hospitality Franchising, LLC, No. 1:21-CV-05081-LMM (N.D. Ga.), and Synergy Hotels, LLC v. Holiday Hospitality Franchising, LLC, No. 1:21-CV-05164-MHF (N.D. Ga.). [Doc. 60]. The undersigned consolidated those cases with Park 80 Hotels, LLC v. Holiday Hospitality Franchising, LLC, No. 1:21-CV-04650-ELR ("the Lead Case"), which had been previously transferred to this Court. Thereafter, two additional cases against Defendants (110 Sunsport LLC v. Holiday Hospitality Franchising, LLC, No. 1:21-CV-00844-SCY-JHR (D.N.M.) and Aaron Hotel Group, LLC v. Holiday Hospitality Franchising, LLC, No. 3:21-CV-00727-AVC (D. Conn.)) were transferred to this Court and opened as Nos. 1:22-CV-00456-ELR and 1:22-CV-00838-ELR, respectively. The undersigned also consolidated those cases with the Lead Case. See Nos. 1:22-CV-00456-ELR, [Doc. 43]; 1:22-CV-00838-ELR [Doc. 57]. The Court directed the Parties to make any filings related to the consolidated cases in the Lead Case [Doc. 74] and administratively closed each of the non-lead cases [Doc. 96].

On March 31, 2022, Plaintiffs Park 80 Hotels, LLC, PL Hotels, LLC, PH Lodging Tomball, LLC, Aaron Hotel Group, LLC, 110 Sunsport, LLC, and Synergy Hotels, LLC filed their Consolidated Class Action Complaint ("Consolidated Complaint") [Doc. 65] in the Lead Case.[1] Defendants filed a motion to dismiss, which the Court granted in part and denied in part, allowing the following claims to proceed: Count I (limited to the breach of contract claim in paragraph 218(l) of the Consolidated Complaint); Count II (violation of Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. §§ 10-1-370 et seq. ("GUDTPA")); Count V (accounting); and Count VI (litigation expenses under O.C.G.A. § 13-6-11). [Doc. 81 at 65].

Following the close of discovery, Defendants moved for summary judgment on each of the four remaining Counts of the Consolidated Complaint and to exclude the testimony of Plaintiff's expert, and Plaintiffs moved for class certification. [Docs. 123; 129; 136]. Having found Defendants' summary judgment motion dispositive as a matter of law for the reasons set forth below, the Court denies as moot Defendants' motion to exclude the testimony of John Whitman, because it concerns testimony not material to the Court's basis for granting summary judgment.

---

[1] Following consolidation, Plaintiff Bensalem Lodging Associates LLC filed a Notice of Dismissal with Prejudice (No. 1:21-CV-05081-ELR, [Doc. 39]), which the Clerk approved on January 6, 2022. Accordingly, that case (No. 1:21-CV-05081) was dismissed pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), and Bensalem Lodging did not join in the Consolidated Complaint.

The Court also denies Plaintiff's motion to certify a class because no pending claims remain.

## II.     Factual Background[2]

Defendants are entities doing business as IHG Hotels & Resorts. Defs.' Stmt. of Undisputed Material Facts ("SUMF") ¶ 1 [Doc. 123-2]. Plaintiffs, except for Plaintiff PL Hotels, LLC,[3] currently operate hotel properties under one of the IHG brands, pursuant to their license (or relicense) agreements[4] with Defendant Holiday Hospitality Franchising, LLC ("HHF"). Id. ¶¶ 2–7, 9–10. Each Plaintiff was provided a Franchise Disclosure Document ("FDD") before it entered its license (or relicense) agreement with HFF. Id. ¶¶ 11–16. Item 8 of the FDD discloses approved-supplier programs and procurement programs and various commissions, rebates, and fees associated with those programs. Id. ¶ 17. It also provides that the licensee (also referred to as franchisee) may purchase equipment, furnishings, and supplies for the operation of the IHG-brand property from any source that meets

---

[2] The factual statement here does not constitute actual findings of fact. The Court derives the facts below from the evidence in the record, and it views these facts in the light most favorable to Plaintiffs. Moreover, most of the facts recited here are not in dispute. To the extent a genuine dispute regarding a fact is presented, the Court so indicates.

[3] More than two years after PL Hotels co-filed the Lead Case, it terminated its license agreement with HHF and sold the property it had operated under that agreement. SUMF ¶ 8.

[4] A relicense agreement is a new license agreement for a hotel that has been previously operating as an IHG Brand hotel under a previous license agreement between the licensing parties. SUMF ¶ 4. Aaron Hotel Group and 110 Sunsport are operating under a relicense agreement. Id. ¶¶ 3, 5.

specifications, unless HFF requires purchase from a designated or approved provider. Id. ¶ 19. Item 8 further discloses that the licensees may be provided "with information and recommendations concerning firms which offer products and services which your License or Holiday's standards require you to use, which are necessary and useful to the operation of a hotel, or which meet Holiday's standards and specifications." Id. ¶ 20. And it further discloses that

> [i]n furnishing supplier or service provider information and making recommendations, Holiday uses its business judgment regarding the long-term interests of the System as a whole, based on its information at that time concerning quality, performance, competitive pricing and similar factors. However, by identifying or recommending a supplier or service provider Holiday makes no warranty to you of these or any other factors[.]

Id. ¶ 21. Regarding Defendants' Standard Room Décor Program ("SRD"), the FDD provides that the licensee may choose from certain décor schemes with "competitive pricing and delivery commitments from the established SRD approved suppliers." Pls.' Stmt. of Additional Undisputed Material Facts ("SAMF") ¶ 43 [Doc. 141-1]. According to the FDD, the IHG brand procurement program, IHG Marketplace, seeks "to deliver value and lower cost purchasing opportunities and options to its customers . . . , including Holiday's franchisees" and that procurement program participants "will purchase goods and services directly from suppliers at the IHG Procurement Programs' negotiated pricing." Id. ¶¶ 45–46. Finally, the FDD also discloses that IHG Marketplace or the franchisee may receive allowances and

rebates directly from suppliers and that "[a]ll supplier allowances and rebates will be fully transparent to the franchise buyer and distributed to the hotels either directly from suppliers or through the IHG Marketplace administrative group." Defs.' Resp. to SAMF ¶ 47 [Doc. 151-1]. In addition to these disclosures in the FDD, Defendants state on their website that franchisees have access to "negotiated" and "optimal" pricing that results in "unparalleled cost savings." SAMF ¶ 51.[5]

Based on the above-mentioned statements in the FDD, Plaintiffs maintain that Item 8 of the FDD discloses (a) requirements mandating the use of designated suppliers, (b) the franchisor's guarantee to prospective franchisees that "it uses its bargaining power to obtain deals with vendors to provide supplies at lower costs to franchisees," and (c) a representation that "all supplier rebates will be fully transparent and distributed to franchisees." [Doc. 141 at 3–4]. Plaintiffs contend, however, that the record establishes that Defendants representation of rebate transparency and distribution and the guarantee of the use of bargaining power to lower costs are false. Id. at 3–5. According to Plaintiffs, the record also establishes

---

[5] Defendants object to the Court's consideration of this fact because it is introduced via the report of the expert Defendants seek to exclude. They further object that this fact fails to support Plaintiffs' claim and, thus, is immaterial. Because Defendants do not dispute that their website contains the representation Plaintiffs advance, the Court recites that representation here, and it overrules Defendants' objection as to materiality because the thrust of that argument is that there is no evidence in the record that Plaintiffs relied on the website representation in entering their respective license (or relicense) agreements. That may be so, but that determination is not relevant to the Court's analysis.

that the representation on Defendants' website of negotiated and optimal pricing and cost savings for franchisees is equally false. Id. at 5. Plaintiffs seek to hold Defendants liable under GUDPTA for their false and misleading representations.[6]

## III. Legal Standard

A court may grant summary judgment only if the record shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986). And a factual dispute is material if resolving the factual issue might change the suit's outcome under the governing law. Id. at 248. The court should grant a motion for summary judgment only if no rational fact finder could return a verdict in favor of the non-moving party. Id. at 249–50.

When ruling on the motion, a court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. Reeves v. Sanderson Plumbing Prods., Inc., 530

---

[6] The Consolidated Complaint also asserts a breach of contract claim in paragraph 281(l) of Count I. In response to Defendants' summary judgment motion, Plaintiffs abandon that claim. [Doc. 141 at 10]. Thus, the Court grants summary judgment against Plaintiffs as to that sole remaining portion of Count I. Baxter v. Santiago-Miranda, No. 23-11902, 2024 U.S. App. LEXIS 28813, at *16 (11th Cir. Nov. 13, 2024) (noting that where a plaintiff concedes a claim by failing to raise it in its response to a summary judgment motion, "that route will result in the entry of judgment on that claim against the plaintiff")

U.S. 133, 150 (2000). The moving party need not positively disprove the opponent's case; rather, the moving party must establish the lack of evidentiary support for the non-moving party's position. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets this initial burden, to survive summary judgment, the non-moving party must then present competent evidence beyond the pleadings to show that there is a genuine issue for trial. Id. at 324–26. The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251–52.

**IV.   Discussion**

Pursuant to GUDPTA, "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable. Proof of monetary damage, loss of profits, or intent to deceive is not required." O.C.G.A. § 10-1-373(a). Plaintiffs concede that GUDPTA only provides injunctive relief. [Doc. 141 at 16]. They seek an injunction requiring Defendants to (1) grant "waivers" allowing the

purchase of supplies from non-approved suppliers,[7] (2) be transparent about supplier rebates, and (3) remit all rebates from suppliers to franchisees. [Doc. 141 at 19].

Defendants argue that Plaintiffs' GUDPTA claim fail for several reasons, including because it is time-barred (for four of six Plaintiffs) and because Plaintiffs lack standing to assert a GUDPTA claim. The Court addresses those two arguments below.

A.  Statute of Limitations

Defendants contends that Park 80 Hotels, PL Hotels, PH Lodging Tomball, and Synergy Hotels ("Time-barred Plaintiffs") are foreclosed from raising a GUDPTA claim because the four-year statute of limitations as to these Plaintiffs has run. [Doc. 123-1 at 15].[8] Plaintiffs allege that Defendants' misrepresentations

---

[7] Although Plaintiffs do not make the scope and context of the waivers explicit, the waivers appear to be geared toward facilitating the purchase of brand-mandated and non-brand mandated items from approved suppliers. [See Doc. 141 at 19].

[8] Defendants' reply brief asserts that the time bar also extends to Aaron Hotel Groups and 110 Sunsport. Because this argument was raised for the first time in the reply, the Court does not consider it. See Brown v. Life Univ., Inc., No. 1:23-cv-02487-MLB-LTW, 2023 U.S. Dist. LEXIS 215286, at *3 (N.D. Ga. Dec. 1, 2023). But even assuming that Defendants properly raised this argument, the argument fails. Defendants' premise is that Plaintiffs conceded in their response brief that the alleged misrepresentations were made before the effective date of the license agreements. [Doc. 152-1 at 3–4]. Based on this premise, Defendants argue that Plaintiffs' claims accrued when each of them *first* executed a license agreement with HHG, which for Aaron Hotel and 110 Sunsport (who, unlike the Time-barred Plaintiffs, are currently operating under a relicense agreement) was in 2008 and 2009, respectively. Defendants' premise is faulty; Plaintiffs do not concede the point Defendants claim they do. Plaintiffs state only that "[a]s to these four [Time-barred] Plaintiffs, . . . the misrepresentations made by [Defendants] in the FDD and in their advertising material were initially made prior to the effective date of the License Agreements." [Doc. 141 at 11]. Nothing in this statement speaks to any misrepresentations allegedly made at the time that Aaron Hotel and 110 Sunsport executed their initial license agreement.

regarding pricing benefits and rebates induced each of them into signing a license agreement with HHF. Consolidated Compl. ¶ 225. Because the relevant license agreements were executed between 2014 and 2016, SUMF ¶¶ 6–7, 9–10, according to Defendants the GUDPTA claim asserted by Time-barred Plaintiffs accrued upon the agreements' execution, i.e., more than four years before they filed their complaints in May and June 2021. [Doc. 123-1 at 15].

Plaintiffs maintain that Georgia law's fraud exception applies to toll the statute of limitations for Time-barred Plaintiffs' GUDPTA claim. [Doc. 141 at 10]. Pursuant to Georgia law, "[i]f the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud." O.C.G.A. § 9-3-96. Plaintiffs assert that they did not become aware for "certain" of Defendants' fraudulent misrepresentations until they obtained Defendants' supplier agreements through discovery and that Defendants' scheme could not have been known without those documents. [Doc. 141 at 11].

To establish tolling under § 9-3-96, a plaintiff must show that: "(1) the defendant committed actual fraud; (2) the fraud concealed the cause of action from the plaintiff; and (3) the plaintiff exercised reasonable diligence to discover his cause of action despite his failure to do so within the statute of limitation." Daniel v. Amicalola Elec. Membership Corp., 711 S.E.2d 709, 716 (Ga. 2011). Since

Plaintiffs asserted their GUDPTA claim in the Consolidated Complaint,[9] it is apparent that Plaintiffs were aware of facts reasonably supporting that claim when they filed that pleading. However, not only is the Consolidated Complaint devoid of facts to support an allegation of tolling, nothing in the record on summary judgment indicates that Defendants' alleged fraud served to conceal the cause of action from Time-barred Plaintiffs or that Time-barred Plaintiffs exercised reasonable diligence to discover the cause of action. In fact, the Consolidated Complaint's allegations tend to show that Time-barred Plaintiffs could have discovered Defendants' alleged misrepresentations within the four-year statute of limitations.

For example, the Consolidated Complaint alleges that although Defendants' franchisees secured "far more reasonable rates" for credit card processing services in the open market, Defendants require them to pay the higher rates charged by Defendants' vendors. Consolidated Compl. ¶ 78; see also Compl. ¶ 79 (alleging that franchisees "pay more than double the price" for internet services), Compl. ¶ 83 (alleging that through independent outreach to an IHG-mandated furniture manufacturer, a franchisee secured a price quote that was "50% less than the price paid through IHG Marketplace"). Plaintiffs' allegations show that by inquiring about the rate of a given good or service on the open market and comparing that rate to the

---

[9] Time-barred Plaintiffs' initial complaints were filed in federal courts outside of Georgia, and they do not assert a cause of action under GUDPTA.

rate paid to Defendants' vendors, Time-barred Plaintiffs could have discovered Defendants' alleged misrepresentations about beneficial pricing at any time after executing their license agreements. Plaintiffs point to nothing in the record that indicates that Time-barred Plaintiffs diligently attempted to discover those misrepresentations. See My 24hour News.Com, Inc. v. AT&T Corp., No. 1:18-CV-1647-MHC, 2019 U.S. Dist. LEXIS 176712, at *20–21 (N.D. Ga. Jan. 10, 2019) (holding that fraudulent inducement claim, among others, not tolled under § 9-3-96 because the plaintiff "has not shown reasonable diligence sufficient to toll the statute of limitations"). Accordingly, the statute of limitations bars Time-barred Plaintiffs' claim under GUDPTA.

### B. Lack of Standing Under GUDPTA

Unlike the time-bar, which applies only to four Plaintiffs, Defendants argue that their lack of standing under GUDPTA extinguishes the claim as to all Plaintiffs. As Plaintiffs acknowledge, "injunctive relief is the only remedy permitted by [GUDPTA]." Catrett v. Landmark Dodge, 560 S.E.2d 101, 106 (Ga. Ct. App. 2002). And that relief "is to prevent, prohibit or protect from future wrongs and does not afford a remedy for what is past." Id. (cleaned up). Thus, "[t]o have standing to seek injunctive relief under [GUDPTA], a plaintiff must show, under its plain language, that she is 'likely to be damaged' in the future by some deceptive trade practice of

the defendant." Bolinger v. First Multiple Listing Serv., 838 F. Supp. 2d 1340, 1364 (N.D. Ga. 2012). Plaintiffs have not done so here.

In Catrett, a vehicle dealer allegedly made misrepresentations about a vehicle that induced the plaintiff (Catrett) to buy the vehicle, and the plaintiff sued under GUDPTA to enjoin the dealer from continuing its deceptive trade practices. 560 S.E.2d at 105–06. The court affirmed the dismissal of the GUDPTA claim on summary judgment because there was no evidence to show that Catrett "is likely to be damaged by these trade practices in the future." Id. at 106 (cleaned up). Similarly, here, as the Consolidated Complaint alleges, Defendants misrepresentations induced Plaintiffs to enter license agreements with Defendants. Consolidated Compl. ¶ 225. That harm, just like Catrett's purchase of the misrepresented vehicle, occurred in the past and cannot be remedied by an injunction against Defendants trade practices. Plaintiffs do not assert that they intend to enter license agreements with Defendants in the future that would be affected by the deceptive trade practices alleged here. Further, Tri-State Consumer Ins. Co. v. LexisNexis Risk Sols., Inc., 823 F. Supp. 2d 1306 (N.D. Ga. 2011), is on point. There, the plaintiff alleged that the defendant's misrepresentations induced the plaintiff to execute a contract with the defendant, but the court dismissed the plaintiff's GUDPTA claim because it had not alleged future harm based on those misrepresentations. Tri-State, 823 F. Supp. 2d at 1326–27.

Plaintiffs argue that they have standing under GUDPTA because they suffer continuing harm from Defendants' misrepresentations. Specifically, Plaintiffs contend that they are harmed each time they make a purchase from Defendants' approved suppliers because, contrary to Defendants' representations, they do not receive the benefit of negotiated pricing. That, however, is the result of Plaintiffs' operation under contracts and Defendants' failure (if any) to adhere to the relevant provisions of those contracts. The harm from the alleged misrepresentation itself was Plaintiffs' execution of the license agreements. The case Plaintiffs rely on, Iler Grp., Inc. v. Discrete Wireless, Inc., 90 F. Supp. 3d 1329 (N.D. Ga. 2015), is in apposite. In Iler, the court considered the plaintiff to have standing under GUDPTA because it alleged that the defendant continued to send letters to the plaintiff's customers passing off the services the plaintiff provided to those customers as those of the defendants. 90 F. Supp. 3d at 1333, 1342. According to the court, continuing misrepresentations to the plaintiff's customers were likely to cause the plaintiff harm. Id. at 1342. That is not the case here, where Defendants' alleged misrepresentations have already caused Plaintiffs harm—i.e., allegedly induced Plaintiffs into executing the license agreements.

Moreover, even assuming Plaintiffs have established future harm, that harm cannot be remedied by an injunction. See Serveco N. Am., LLC v. Bramwell, No. 4:22-Cv-140-MLB, 2023 U.S. Dist. LEXIS 45886, at *19 (N.D. Ga. Mar. 20, 2023)

(noting that, under GUDTPA, "the question is whether there will be future **wrong and harm that can be remedied by an injunction**" (emphasis in original)). Plaintiffs concede that GUDPTA does not authorize specific performance. [Doc. 141 at 19–20]. However, that is the relief they seek regarding rebates Defendants receive. Specifically, they request an injunction requiring Defendants to make good on their alleged promise—i.e., to be transparent about supplier rebates and to pass along the rebates they receive to their licensees. [Doc. 141 at 19]. Thus, the alleged harm cannot be remedied by an injunction under GUDTPA. Scm Grp. N. Am. Inc. v. Chebli Architectural Woodworking, Inc., No. 1:16-CV-4447-MHC, 2018 U.S. Dist. LEXIS 231259, at *13 (N.D. Ga. Feb. 27, 2018) (noting that specific performance is not a remedy under GUDTPA).

The injunction Plaintiffs seeks to address the pricing benefits misrepresentations—waivers allowing purchases from non-approved suppliers—also fails to cure Plaintiffs' harm. Plaintiffs themselves explain: "Even if Plaintiffs were given a waiver by IHG for all brand-mandated items and then purchased all non-brand mandated items from non-IHG approved suppliers, they still are harmed because Plaintiffs did not get the benefit of IHG leveraging their 6,000 franchises." [Doc. 141 at 19]. In essence, Plaintiffs seek to alter the terms of their license agreements, but they provide no authority supporting the grant of such relief under GUDPTA.

In sum, Plaintiffs have failed to show that that Defendants' alleged misrepresentations will cause future harm or that GUDPTA is the vehicle to address any such harm. Time-barred Plaintiffs' GUDTPA claim additionally fails as it was filed outside the untolled statute of limitations. Thus, summary judgment on Count II of the Consolidated Complaint is appropriate.[10]

## V.  Conclusion

For the reasons set forth above, the Court **GRANTS** Defendants' Motion for Summary Judgment [Doc. 123] directed to the sole remaining portion of Count I and Counts II, V, and VI. The Court **DENIES AS MOOT** Defendants' Motion to Exclude Expert Testimony of John Whitman [Doc. 136] and Plaintiffs' Motion for Class Certification [Doc. 129].

As no further issues remain pending, the Clerk is **DIRECTED** to terminate this Lead Case (1:21-CV-04650-ELR) and to enter judgment in favor of Defendants and against Plaintiffs in this Lead Case as well as in the following member cases:

---

[10] Because the underlying claims (Count I and II) are dismissed, Plaintiff's remaining claims for an accounting (Count V) and for fees and costs under O.C.G.A. § 13-6-11 (Count VI) fail as they cannot be maintained as independent causes of action. Zaki Kulaibee Establishment v. McFliker, 771 F.3d 1301, 1310 n.21 (11th Cir. 2014) ("[A]n accounting is best understood as a remedy for a cause of action, not as a cause of action in its own right."); Ronald McDonald House Charities, Inc. v. Ronald McDonald House Charities of W. Ga., Inc., No. 4:22-Cv-207 (CDL), 2024 U.S. Dist. LEXIS 14702, at *8–9 (M.D. Ga. Jan. 26, 2024) ("O.C.G.A. § 13-6-11 does not create an independent cause of action" and is only permissibly asserted "in connection with a separate substantive claim for relief." (cleaned up)).

1:21-cv-05072-ELR; 1:21-CV-05164-ELR; 1:22-CV-00456-ELR; and 1:22-CV-00838-ELR.

**SO ORDERED**, this 9th day of December, 2024.

                                                        */s/ Eleanor L. Ross*
                                                     Eleanor L. Ross
                                                     United States District Judge
                                                     Northern District of Georgia